## MENTZER *v.* ARMOUR and others.

*(Circuit Court, W. D. Missouri.* October, 1883.

1. PERSONAL INJURY—NEGLIGENCE—BURDEN OF PROOF.
   The law does not presume or impute carelessness or negligence, but requires it to be shown by him who alleges it, and unless he does show it he cannot recover.

2. SAME—CARPENTERS—RISKS ATTENDING THE TRADE.
   A carpenter engaging himself as such is bound to know, and he assumes, the ordinary dangers of his calling, and must exercise prudence and caution accordingly.

3. SAME—OVERSEERS—CARE IN SELECTING.
   In employing overseers or superintendents ordinary care and prudence must be used in ascertaining their qualifications and fitness, but the law presumes that self-interest is a sufficient stimulant in the ascertainment of the suitableness of an overseer, and therefore the burden of proof is with him who alleges the unfitness.

4. SAME—SETTEMENTS OF CLAIMS FOR DAMAGES
   The law favors settlements between those claiming damages for personal injuries and those who may be the cause of the same; but if such settlements are induced by false representations, or when the injured party is not in possession of his proper senses, they must be regarded as a nullity.

At Law.

*Scott & Taylor,* for complainant.

*Pratt, Krumbock & Ferry,* for defendants.

KREKEL, J., *(charging jury.)* This suit is brought by Mentzer, plaintiff, to recover damages from Armour and others, defendants, for personal injury sustained while in their employ as a carpenter upon a building which defendants were erecting in Kansas City. In the statement of his cause of action Mentzer alleges generally that his injury resulted from defendants failing to furnish proper material for the construction of the building; failing to furnish a safe and proper structure for him to stand and walk on; failing to furnish efficient and sufficient superintendents; charging that the defendants wholly disregarded their duty in these respects, carelessly and negligently furnishing unsound and defective lumber for joists; that defendants' agents carelessly and negligently nailed and fastened the joists; that they carelessly and negligently furnished unskilled and incompetent superintendents,—all of which the defendants knew, or might have known by the exercise of ordinary care; that this carelessness and neglect caused dangers of which they failed to advise him; that defendants' overseer ordered him to go upon said joists to brace them,

which he did, and was thereby permanently injured and disabled, to his damages in the sum of $1,500. The defendants in their answer generally deny all carelessness and neglect; deny that the material used in the building was unsound or otherwise defective; and say that the injury plaintiff received was the result of his own carelessness and neglect, and that they are therefore not liable to him. They further set up a release, whereby any claim for damages which plaintiff might have had was discharged.

You observe that the complaint of the plaintiff proceeds upon the ground that defendants were bound to furnish suitable material for building purposes, and place the same in proper position for his work; that the defendants did not furnish efficient superintendents, in consequence of which neglect by the defendants the plaintiff was injured. In the consideration of the case you will bear in mind that the allegations of carelessness and neglect made by the plaintiff he is bound to prove by a preponderance of evidence. The law does not presume or impute carelessness or negligence, but requires it to be shown by him who alleges it, and unless he does show it he cannot recover.

And, *first*, as to the defense set up that defendants have been released from any damages to which the plaintiff may have been entitled. The execution of the release in evidence is not denied. Regarding this release it may be said that the law favors settlements of the kind. A defendant may buy his peace. The plaintiff says he ought not to be bound by it, because the release was obtained from him by fraudulent misrepresentations made by defendants' agents, and that he was not in his right mind when he executed it; that when it was obtained he was suffering from pain, and was under the influence of drugs, and did not know what he was doing. The allegations as to the fraudulent obtaining of the release, and the state of his mind at the time of executing it, made by the plaintiff, must be proven by him. If you are satisfied from the evidence that the release in question was obtained by fraudulent representations, or that from any cause plaintiff was not in his right mind when he executed the same, he ought not to be bound by it, and it should be treated by you as a nullity. The release is valid as it stands, and unless successfully attacked as stated, ends the case, and your verdict should be for the defendants.

As I cannot and have no right to anticipate the result of this branch of the case, I proceed to instruct you upon the remaining issue— that of carelessness and negligence on the part of the defendants. And here, *first*, of the suitableness of the timber. The modern tendency is to grade all property entering into commerce as far as possible, so that the knowledge of the grade of an article enables any one to fix, for the time being, its market value. Lumber, it seems, has measurably been brought within this tendency. Thus, according to the evidence, we have a first, second, and third grade in clear;

and first, second, and culls in lumber not clear. In 1879, the time the defendant built the structure in which the plaintiff was injured, there were only two grades in lumber not clear, namely, first grade and culls. It may be taken to be conceded that first-class lumber (not clear) is not only suitable, but almost universally used for joists; but it is claimed that the first class of lumber last spoken of contains a certain percentage of lumber unfit for use, and that this unfit lumber must be ascertained by inspection and thrown out before use can be made of first-class lumber with safety. Whether this claim by plaintiff is well made and supported by the evidence you must determine. Defendants say that the inspection here spoken of, whether required or not, did in fact take place, under the order of the superintendents, and by the carpenters who prepared and fitted the joists for laying. It is for you to say, under the evidence, whether the purchasing of graded lumber in the market, and the manner in which the lumber was inspected afterwards by the defendants before the same was put in the building, constituted usual and ordinary care, so as to release the defendants from the charge of carelessness and negligence regarding the timber used. If you shall come to the conclusion that what was done in the way of inspection of the lumber used in defendants' building constituted usual and ordinary care, in that case the defendants are not liable, though a defective joist may have gone in the building, and have been the cause of or contributed to the injury of the plaintiff. If you arrive at the conclusion that what was done in the way of inspection of the lumber used by defendants did not constitute usual and ordinary care, and that a defective joist went into the building, which was the cause of his injury, the defendants would be liable, under the limitations to which I shall hereafter call your attention.

Regarding overseers or superintendents, you are instructed that in employing them ordinary care and prudence must be used for the ascertainment of their qualifications and fitness. The law presumes that self-interest is a sufficient stimulant in the ascertainment of the suitableness of an overseer or superintendent, and therefore you must take it that the overseers or superintendents employed by defendants were qualified for their position, and the plaintiff is bound to show their unfitness, and that defendants knew of such unfitness, or might have known thereof by using ordinary care, and that thus having the actual or imputed knowledge they still retained the unfit person. But not only must you be satisfied that defendants' overseer or superintendents were unfit for their positions, and that the defendents knew it, but you must be further satisfied that their unfitness caused or directly contributed to the injury of the plaintiff.

The plaintiff, under the evidence in this case, had himself certain obligations to discharge, to which I proceed to call your attention. The law is that a carpenter, engaging himself as such, is bound to know, and he assumes, the ordinary dangers of his calling, and must

exercise prudence and caution accordingly. Thus, when the overseer or superintendent of the defendant ordered plaintiff to go upon the fourth floor of the building to brace joists, he was bound to see when he went to work whether the joists were in a condition to be braced. The overseer, in sending plaintiff to do work with which he is presumptively familiar, had a right to assume that the plaintiff would exercise ordinary care and prudence in seeing that work upon which he was entering was in safe condition. Plaintiff, with this presumed knowledge of how the laying and bracing of joists is done, was bound to see that the joists were in their designated places, and that they were in the condition in the way of toe-nailing, if such was necessary for safety, for the purpose of bracing, before he undertook to brace them. If plaintiff failed or neglected to use this precaution, and such failure caused or contributed to his injury, he cannot recover, he being in fault. If you shall find from the testimony that the plaintiff walked from the foot-board on the joist, and that such proceeding was an imprudent or reckless act, and the injury resulted therefrom, he cannot recover, because of his being in fault himself.

The meaning and intent of what has been said regarding plaintiff's obligation amounts, in short, to this: that a carpenter, when sent upon work within the scope of a carpenter's usual knowledge, the presumption is that he possesses such knowledge, and that he will use it, in the way of accomplishing the object of the work in which he is engaged, with due care to the interest of his employer and with a view to his own safety. If he fails to exercise the caution here spoken of, he does it at his own peril, and has no one to blame but himself if he is injured in consequence. No notice of common danger pertaining to the occupation need be given. He is supposed to know them, and assumes the risk in the employment.

The matters upon which you have to pass may be summed up as follows:

The release in evidence will entitle the defendants to a verdict in their favor, unless the same was obtained by misrepresentations, or the plaintiff at the time of executing the same was in a state of mind unfitting him from entering into the contract. If the release was obtained by misrepresentations, or when the plaintiff was not in his right mind, in either case it should be treated as a nullity. The joist causing the injury, if inspected according to the instructions given you in that regard, is to be taken as fit and suitable to be used in defendants' building; and if injury resulted from its use to plaintiff, defendants are not responsible therefor. If the joist, whether inspected or not, has been proven to your satisfaction to have been fit for the use to which it was put, the defendants are not responsible for the injury which may have resulted therefrom to the plaintiff. If the joist was not inspected as required by the instructions given you, and you are further satisfied from the evidence that the same was unfit for the use to which it was put, and that plaintiff

himself, using the precaution and care which his profession and employment imposed on him, was, notwithstanding, injured in consequence of the unfitness of the joist, he is entitled to recover, and the verdict should be for him. Though you may find from the evidence that the joist in question was not properly inspected, and was not fit to be used in the building of defendants, yet, if plaintiff contributed to his injury by imprudence or recklessness, without which the accident would not have happened, this constituted contributory negligence, and the plaintiff cannot recover, and the verdict should be for the defendant. Though you may find from the testimony that the superintendent or overseer ordering plaintiff to proceed to brace the joists was an unfit person for his position, this did not relieve the plaintiff from using the ordinary prudence and care heretofore spoken of.

There is no controversy about the safety of the structure erected by defendants as a whole, and therefore no mention has been made thereof in the instructions, though set up in plaintiff's declaration.

The rule of assessing damages, in case you find the issues for the plaintiff, is as follows: The difference between his former and his present ability to earn, including compensation for his past suffering.